<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GAETANO TIRRI, BRIAN KALMUS, and KELLY TAYLOR, on behalf of themselves and the putative class, | : : : : : |
| Plaintiffs, | : : |
| v. | : Civil Action No. 3:16-cv-1771-BRM-TJB |
| | : : |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION d/b/a FANTASEA RESORTS, LA SAMMANA VENTURES, LLC d/b/a FANTASEA RESORTS, and ATLANTIC PALACE DEVELOPMENT CORP. d/b/a FANTASEA RESORTS, | : : : : : **OPINION** : : : |
| Defendants. | : : |

**MARTINOTTI, DISTRICT JUDGE**

Before this court is a Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Cause of Action Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Flagship Resort Development Corporation d/b/a FantaSea Resorts ("Flagship"). (Dkt. No. 14.) Plaintiffs Gaetano Tirri ("Tirri"), Brian Kalmus ("Kalmus"), and Kelly Taylor ("Taylor") (collectively, "Plaintiffs") oppose this motion. (Dkt. No. 16.) Plaintiffs purchased interest in timeshare properties from Defendants Flagship, LaSamanna Ventures LLC ("LaSamanna") d/b/a FantaSea Resorts, and Atlantic Palace Development Corp. ("Atlantic Palace") d/b/a FantaSea Resorts (collectively, "Defendants"), and, through the filing of an Amended Class Action[1] Complaint and Jury Demand

---

[1] The Plaintiffs' potential class action certification is not at issue in this motion.

("Amended Complaint") (Dkt. No. 9), seek damages and injunctive relief in connection with the various agreements signed when purchasing their respective property interests. (Dkt. No. 9, at ¶¶ 1, 2.) Specifically, Plaintiffs allege violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56-8:1, *et seq.* ("CFA"), the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14, *et seq.* ("TCCWNA"), and the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53, *et seq.* ("FFA"). (*Id.*) Upon reviewing the papers submitted by counsel, for the reasons set forth below and for good cause having been shown, Flagship's motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Procedural History

On February 11, 2016, Plaintiffs filed a complaint in the Superior Court of New Jersey, Law Division (Dkt. No. WRN-L-53-16). On March 31, 2016, Defendants filed a Notice of Removal to the United States District Court for the District of New Jersey. (Dkt. No. 1.) On April 21, 2016, prior to filing its answer, Flagship filed a motion to dismiss for failure to state a claim. (Dkt. No. 5.) On May 12, 2016, Plaintiffs filed the Amended Complaint (Dkt. No. 9) and the motion to dismiss the original complaint was terminated by the court without prejudice (Dkt. No. 10). Defendants were granted an extension until June 9, 2016, to file an answer (Dkt. No. 11) and Flagship filed the pending motion to dismiss on that deadline (Dkt. No. 14). To date, no defendant has filed an answer, and only Flagship has filed a motion to dismiss.

### B. Factual History

The following accepts as true Plaintiffs' factual allegations from the Amended Complaint and draws all inferences in the light most favorable to Plaintiffs. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### 1. Defendants' Alleged Business Practices

Defendants sell timeshare interests in resort properties, including a property located in New Jersey ("Flagship Property"). (Dkt. No. 9 at ¶ 17.) As part of their advertising practices, Defendants offer giveaways, including free or discounted trips, in exchange for attending a presentation about the timeshare properties. (*Id.* at ¶ 19.) Plaintiffs allege attendees are often "confronted with high-pressure sales tactics that involve threats to revoke the 'free' gifts if the consumer leaves the premises." (*Id.* at ¶ 20.) If a timeshare is purchased, Defendants require the purchaser to execute a Deed of Transfer, Deed-in-Lieu of Foreclosure, and an Escrow Agreement whereby the consumer agrees that the mortgage, note, down payment, deed-in-lieu, and all payments will be held in escrow by Defendants' in-house counsel. (*Id.* at ¶ 23.)

### 2. Plaintiffs Kalmus and Taylor

Kalmus and Taylor purchased a timeshare at one of Defendants' New Jersey properties for $5295.00 in April 2011. (*Id.* at ¶ 29.) On December 12, 2012, Kalmus and Taylor attended Defendants' presentation "with the promise of a future two-night vacation with a third-party company and discounted event tickets." (*Id.*) While at the presentation, Kalmus and Taylor allege Defendants' sales representative told them: (1) their current property was worthless; (2) they missed a special offer to upgrade their property; (3) Defendants had failed to notify Kalmus and Taylor of the special offer; and (4) Defendants would make a one-time exception and give Kalmus and Taylor membership to Defendants' rewards points program. (*Id.* at ¶¶ 29, 30.)

Kalmus and Taylor contend the aforementioned statements by the sales representative were made to "pressur[e] and induc[e]" them into purchasing an upgraded timeshare property, which they ultimately purchased. (*Id.* at ¶¶ 31, 32.) On or about December 22, 2012, Kalmus and Taylor executed a Purchase and Sale Agreement ("PSA") for Flagship Resort Unit 0308E, Contract No.

101522, for the purchase price of $15,195.00, providing them with a 1/104th ownership interest in the unit. (*Id.* at ¶ 32.) Kalmus and Taylor made a down payment of $1579.00 and, pursuant to a note payable to Flagship and secured by a mortgage on the timeshare property, agreed to pay the balance to Flagship at a rate of 14.9% per annum in 120 monthly installments. (*Id.* at ¶ 33.)

Kalmus and Taylor executed three additional documents. First, an Interval Deed was executed at the time of purchase and "reflects that the property interest was granted to Kalmus and Taylor." (*Id.* at ¶ 35.) However, pursuant to the PSA, title to the timeshare property would not transfer until Kalmus and Taylor made six (6) consecutive payments or paid off thirty percent (30%) of the total purchase price. (*Id.* at ¶ 34.)

Also executed at the time of purchase was a Deed-in-Lieu of Foreclosure ("DIL") pursuant to N.J.S.A. 2A:50-63. (*Id.* at ¶ 36.) Kalmus and Taylor assert the DIL granted their ownership interest back to Flagship and is a mechanism used by Defendants to recover collateral under N.J.S.A. 2A:50-63. (*Id.* at ¶¶ 37, 38.) Kalmus and Taylor further assert the DIL divested them of use interests for which they paid ultimately consideration. (*Id.* at ¶ 79.)

Finally, Kalmus and Taylor executed an Escrow Agreement pursuant to the PSA. (*Id.* at ¶ 40.) It provided that Flagship's in-house counsel would act as Escrow Agent with respect to the transaction and would hold in escrow all deposit monies, closing costs, and mortgage payments paid by Kalmus and Taylor, along with the original Deed, Mortgage, Note, and DIL. (*Id.*)

Kalmus and Taylor defaulted on May 5, 2015. (*Id.* at ¶ 41.) They maintain they did not receive any benefit from the transaction and never used or enjoyed their timeshare interest. (*Id.* at ¶ 39.) They now seek $7561.00 representing their out-of-pocket money paid to Defendants in down payment, monthly payments, monthly mortgage servicing fees, and annual maintenance payments for interest in a property they allege was rendered valueless by the DIL. (*Id.* at ¶ 83.)

### 3. Plaintiff Tirri

On or about June 1, 2013, Tirri executed a PSA with Flagship for Flagship Resort Unit 1509, Contract No. 102757, which provided Tirri with a 1/52nd ownership interest in the unit. (*Id.* at ¶ 43.) Pursuant to a note payable to Flagship and secured by a mortgage on the timeshare property, Tirri agreed to pay Flagship at a rate of 14.9% per annum in monthly installments for seven (7) years. (*Id.* at ¶ 44.)

Tirri executed the same three additional documents as Kalmus and Taylor, namely: (1) the Interval Deed (*id.* at ¶¶ 45, 46); (2) the DIL (*id.* at ¶¶ 47-49); and (3) the Escrow Agreement (*id.* at ¶ 52). Likewise, Tirri maintains he did not receive any benefit and never used or enjoyed his timeshare interest. (*Id.* at ¶ 50.)

Tirri defaulted in November 2014. (*Id.* at ¶¶ 54, 56.) By letter dated December 10, 2014, Flagship advised Tirri his account was delinquent. (*Id.* at ¶ 56.) On or around February 5, 2015, Tirri received a Foreclosure Final Demand Notice of Default. (*Id.* at ¶¶ 57, 58.)

Tirri seeks $10,836.00 representing his out-of-pocket money paid to Defendants in down payment, monthly payments, monthly mortgage servicing fees, and annual maintenance payments for interest in a property he alleges was rendered valueless by the DIL. (*Id.* at ¶ 83.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Additionally, where a complaint alleges a cause of action under the CFA, the complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However:

> [T]he law does not require specificity just for specificity's sake. The level of particularity required is sufficient details to put Defendants on notice of the "precise misconduct with which they are charged." *Franulovic* [*v. Coca-Cola Co.*], [Civ. A. Nos. 07-539 (RMB), 07-828(RMB),] 2007 WL 3166953, at *11 [(D.N.J. Oct. 25, 2007)]. In other words, "[t]o satisfy the specificity requirement of [Fed. R. Civ. P.] 9(b) the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by

6

> whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Zebersky v. Bed Bath & Beyond, Inc.*, No. CIVA 06–CV–1735 PGS, 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006).

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011).

### III. DECISION

Flagship contends Plaintiffs fail to state a claim under the CFA, FFA, and TCCWNA.

### A. New Jersey Consumer Fraud Act (Count One)

Flagship contends Plaintiffs fail to allege an ascertainable loss, a required element of the CFA. (Dkt. No. 14-1, at 9.) In support, Flagship maintains that Plaintiffs must "show[] a causal link between the offending practice and the claimed loss, with the amount of the ascertainable loss to be demonstrated to a reasonable degree of certainty." (*Id.* at 10 (quoting *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 116 (App. Div. 2005)).) In other words, the loss must be plead with more specificity and must be one caused by Defendants' conduct, not by Plaintiffs' default. (*Id.*)

At this stage, Plaintiffs' CFA claim as plead in the Amended Complaint satisfies the pleading requirements set forth above. The CFA states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J.S.A. 56:8-2. Courts have interpreted this section to require the following three elements to state a cause of action under the CFA: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."

7

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007)).

An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 248. (2005). Plaintiffs need only provide enough specificity to give the defendant notice of damages, *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *7, n.3 (D.N.J. Dec. 17, 2008), and need not "provide evidential material to rebut defendant's contention that [they] sustained ascertainable loss" to overcome a motion to dismiss, *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503, n.8 (D.N.J. 2009) (quoting *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 111 (App. Div. 2006)). Courts support alleged damages based on an out-of-pocket theory or a benefit of the bargain theory. *See Smajlaj*, 782 F. Supp. 2d 84, 99-103; *Thiedemann,* 183 N.J. at 248.

Additionally, plaintiffs must set forth allegations sufficient to show those losses are causally connected to defendant's alleged conduct. It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *7. This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527 (D.N.J. 2008).

Here, Plaintiffs allege the DIL requirement constituted unlawful conduct because it divested them of property for which they paid.[2] (Dkt. No. 9 at ¶¶ 78-81.) Plaintiffs specifically allege they suffered an ascertainable loss comprised of out-of-pocket down payments, monthly payments, monthly mortgage servicing fees, and annual maintenance payments. (*Id.* at ¶ 83.) They further set forth specific facts pertaining to their execution of the DIL and related agreements,

---

[2] The Court, having not been provided with the DIL, accepts as true Plaintiffs' allegations.

8

including the PSA setting forth monthly payments for the respective properties. (*Id.* at ¶¶ 32-38, 43-49.) Under prevailing case law, this is a quantifiable or measurable loss sufficient to put Flagship on notice of Plaintiffs' losses. *See Smajlaj*, 782 F. Supp. 2d 84, 99-103; *Thiedemann,* 183 N.J. at 248.

Flagship further contends Plaintiffs cannot show a causal nexus because the loss was caused by the default. At this juncture in the litigation, Plaintiffs' pleadings for Count One sufficiently allege a causal nexus. Plaintiffs' loss, as alleged, was caused by the execution and effect of the DIL. Plaintiffs allege they paid for interest they did not possess by virtue of signing the DIL. This claim would not change even assuming, *arguendo*, the plaintiffs fulfilled their obligations under the PSA.

Accordingly, Plaintiffs' CFA claim is sufficiently plead and Flagship's motion to dismiss is **DENIED** as to Count One.

### B. New Jersey Fair Foreclosure Act (Count Three)

Flagship argues, correctly, that the FFA does not provide Plaintiffs with a private right of action. *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 399 (D.N.J. 2009). Rather, the FFA is "essentially a notice provision" providing guidance to lenders through the foreclosure process and providing debtors with procedures by which to cure their default. *Id.* (quoting *Whittingham v. Amended Mortgage Elec. Registration Servs., Inc.*, No. 06–3016, 2007 WL 1456196, at *5 (D.N.J. May 15, 2007).

Plaintiffs do not seek damages under the FFA. (*Id.* at ¶ 111.) Plaintiffs allege two causes of action under the TCCWNA, both of which implicate the FFA, and therefore the FFA need not have been raised as an independent cause of action. To the extent the FFA needs be addressed with respect to the TCCWNA, the Court will do so below.

Accordingly, Flagship's motion to dismiss is **GRANTED** as to Count Three.

## **C. New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act (Counts Two and Four)**

Plaintiffs assert two causes of action under the TCCWNA, one based on the DIL and the other on a Notice of Intention to Foreclosure ("NOI") which Plaintiffs allege was sent to members of the potential class. For both claims, they allege the FFA establishes rights held by the Plaintiffs for which the TCCWNA provides damages. (*Id.* at ¶ 94, 111, 113.) Flagship contends, as an initial matter, Plaintiffs' allegations are conclusory and are "silent as to specific language [from the DIL and NOI] that forms the basis of [the FFA] violations." (Dkt. No. 14-1, at 14.) Flagship further argues the TCCWNA does not apply to residential real estate. (*Id.* at 17.)

The TCCWNA provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to "The New Home Warranty and Builders' Registration Act," P.L.1977, c. 467 (C. 46:3B-1 et seq.).

N.J.S.A. 56:12-15.

In order for Plaintiffs to state a cause of action under TCCWNA, they must allege the following four elements:

> (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer a contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a

10

> provision that "violate[s] any legal right of a consumer" or responsibility of a seller.

*Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007), *aff'd and remanded*, 197 N.J. 543, 964 A.2d 741 (2009)).

### 1. TCCWNA As Applied To Residential Real Estate

Flagship argues the TCCWNA claims must be dismissed because "[t]he provisions of [the TCCWNA] shall not apply to residential leases or to the sale of real estate." (Dkt. No. 14-1, at 17 (quoting N.J.S.A. 56:12-15) (citing *Allen v. LaSalle Bank, N.A.*, Civ. No. 08-2240, 2012 WL 1898612, at *4 (D.N.J. May 23, 2012).) Plaintiffs contend Flagship's argument is a red herring because their claims are not related to the sale of real estate and instead are based on the DIL and the NOI. (Dkt. No. 16, at 25.)

The Court in *Allen* found a mortgage agreement fell outside the scope of TCCWNA, stating:

> Although the mortgage at issue is technically the loan agreement between the parties, as opposed to the actual contract for the sale of real estate, these two agreements are inextricably intertwined. A "consumer" is defined under the Truth Act as "any individual who . . . borrows or bails any money . . . which is primarily for personal, family or household purposes." [N.J.S.A. 56:12-15] A purchase mortgage, such as that at issue here, involves an individual who borrows money to consummate the sale of real estate. Therefore, the Court believes that the mortgage agreement, and by consequence, efforts to collect on that mortgage agreement, both fall outside the protections of the Truth Act.

*Allen*, Civ. No. 08-2240, 2012 WL 1898612, at *4.

Here, the Court has not had been provided with the DILs and NOIs and therefore is unable to make an independent determination with respect to whether TCCWNA applies to these documents as a matter of law.

11

### 2. The DIL (Count Two)

Plaintiffs argue the FFA provides, "Waivers by the debtor of rights provided pursuant to this act are against public policy, unlawful, and void," N.J.S.A. 2A:50-61, and that Defendants' DIL, which operates under the optional foreclosure procedures set forth by N.J.S.A. 2A:50-63, includes provisions which violate the prohibition against the waiver of Plaintiffs' rights. (*See generally*, Dkt. No. 9, Count Two.) Plaintiffs' opposition sets forth specific references to the Amended Complaint in which they maintain they adequately plead all elements of the TCCWNA. (Dkt. No. 16, at 19 (citing Dkt. No. 9, at ¶ 88-90, 96-100).)

Flagship argues the "Amended Complaint fails to identify the specific provisions of the debt document" – not just the DIL – "that violated clearly established rights" and have therefore "failed to assert a valid cause of action." (Dkt. No. 14-1, at 16 (citing *Allen*, Civ. No. 08-2240, 2012 WL 1898612, at *4, *Skypala v. Mortgata Elec. Reg. Sys., Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009), and *Perkins v. Washington Mutual, FSB*, 655 F. Supp. 2d 463, 470 (D.N.J. 2009)).)

The cases cited by Flagship are not persuasive. In *Allen* and the cases to which the *Allen* court cites, the issue was whether a payoff constituted a notice within the TCCWNA. The court ultimately found it need not make such a determination because "the correct focus of the court should be upon the underlying debt instrument, not on the efforts to collect the debt." *Allen*, Civ. No. 08-2240, 2012 WL 1898612, at *4. Here, the DIL, which was executed at the same time as and as a requirement of the underlying debt documents, is not a post-default effort to collect the debt.

Similarly, in both *Skypala* and *Perkins*, the courts dismissed plaintiffs' TCCWNA claims for their failure to cite specific portions of the mortgage or note in the complaint; it is not clear from the brief portions of those decisions what documents plaintiffs alleged formed the basis for

their TCCWNA claim. *Skypala*, 655 F. Supp. 2d at 459; *Perkins*, 655 F. Supp. 2d at 470. Here, Plaintiffs have alleged a violation their FFA rights and bring a cause of action under the TCCWNA based on the DIL.

Regarding the specificity of the DIL claim, Paragraph 96 of the Amended Complaint specifically references and quotes the portions of the DIL that Plaintiffs believe violate the FFA and public policy. Whether they are violative is not at issue at this time. Thus, Plaintiffs have sufficiently plead a cause of action for the TCCWNA with respect to the DIL, and Flagship's motion to dismiss as to Count Two is **DENIED**.

### 3. The NOI (Count Four)

Plaintiffs allege Defendants issued a standard form letter purporting to be an NOI, which fails to comply with the statutory requirements of N.J.S.A. 2A:50-56(c)(1)-(11). Specifically, Plaintiffs argue it failed to make certain identifications, failed to advise Plaintiffs of certain rights, and made affirmative misrepresentations as to Plaintiffs' rights. (*Id.* at ¶ 118; *see generally*, Dkt. No. 9, Count Four.) Plaintiffs' opposition sets forth specific references to the Amended Complaint in which they maintain they adequately plead all elements of the TCCWNA. (Dkt. No. 16, at 18-19 (citing Dkt. No. 9, at ¶ 113-15, 119-22).)

Flagship's sole argument[3] as to the NOI is that the TCCWNA only applies to affirmative acts and does not apply to omissions or failures to give notices. (Dkt. No. 14-1, at 14-15 (quoting *Jefferson Loan Co. v. Session*, 397 N.J. Super. 520, 540-41 (App. Div. 2008)).) It follows, Flagship

---

[3] Flagship generally argued that Plaintiff's TCCWNA claims were not alleged with particularity, to which Plaintiff cited specific portions of the Complaint which allege facts supporting each TCCWNA cause of action. The issue not raised by Flagship with respect to Plaintiff's NOI claim is that the pleadings may be deficient as to each named plaintiff. The Court will not address this here but permits Plaintiffs to seek the appropriate relief under Fed. R. Civ. P. 15(a)(2).

argues, that a cause of action cannot be maintained for Defendant's alleged omission of required statutory language. (*Id.* at 15.)

Plaintiffs counter by arguing the TCCWNA applies to omissions made in an affirmatively provided document, such as the NOI. (Dkt. No. 16, at 20-22 (citing *Posey v. NJR Clean Energy Ventures Corp.*, Civ. A. No. 14-6833 (FLW)(TJB), 2015 WL 6561236, at *14 (D.N.J. Oct. 29, 2015) and *Kendall v. Cubesmart LP*, Civ. A. No. 15-6098 (FLW)(LHG), 2016 WL 1597245, at *4 (D.N.J. Apr. 21, 2016)).) Regardless, Plaintiffs argue, the Amended Complaint alleges affirmative misrepresentations. (*Id.* at 22.)

The Court agrees with Plaintiffs. Accordingly, TCCWNA as applied to Plaintiffs' NOI claims is sufficiently plead, and Flagship's motion to dismiss as to Count Four is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Flagship's motion is **GRANTED as to Count Three** and **DENIED as to Counts One, Two, and Four.**

> */s/ Brian R. Martinotti*
> **BRIAN R. MARTINOTTI**
> **UNITED STATES DISTRICT JUDGE**

Dated: October 19, 2016